UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

N⁰ 10 Civ. 3120 (RJS)

———————————

JOSÉ ARMANDO PALACIOS, *ET AL.*,

Plaintiffs,

VERSUS

THE COCA-COLA COMPANY, *ET AL.*,

Defendants.

———————————

OPINION AND ORDER
November 18, 2010

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiffs, Guatemalan labor activists and their family members, bring this action against Defendants, The Coca-Cola Company ("Coca-Cola" or "Defendant") and ten unnamed Coca-Cola agents, seeking redress for violence that occurred in Guatemala.[1] Now before the Court is Defendant Coca-Cola's motion to dismiss for *forum non conveniens* ("FNC"). For the reasons that follow, the motion is granted.

I. BACKGROUND

A. Facts[2]

This case concerns allegations of violence directed at two distinct groups of Plaintiffs. The Court will briefly recite the allegations pertaining to each group, accepting as true all well-pleaded facts asserted in the Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

---

[1] Although Plaintiffs professed their intent to amend the Complaint to allege the true names and capacities of DOES 1-10 (Compl. ¶ 17), no Amended Complaint has been filed. Accordingly, the Court's FNC analysis will focus on the single named Defendant, Coca-Cola.

[2] The recitation of facts below derives from the Complaint. In ruling on the instant motion, the Court has considered Defendant's Memorandum of Law in Support of the Motion to Dismiss the Complaint for *Forum Non Conveniens* ("Def.'s Mem."); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint for *Forum Non Conveniens* ("Pls.' Opp'n"); Defendant's Reply in Support of the Motion to Dismiss the Complaint for *Forum Non Conveniens* ("Reply"); as well as the various declarations and exhibits accompanying these documents.

1. The Palacios Plaintiffs

Plaintiff José Armando Palacios worked for twenty-seven years at a Coca-Cola-affiliated processing plant in Guatemala City that was operated by *Industria de Café S.A.* ("INCASA"). (Compl. ¶ 31.) He became a member of the union *Sindicato de Trabajadores de la Industria del Café y Bebidas Coca-Cola* ("SITINCA") on the day that he began working at INCASA. (*Id.*) Although he left SITINCA when he began work as a security guard in 1991, Palacios re-joined SITINCA in January 2004. (*Id.* ¶¶ 32-33.)

On the same day that Palacios re-joined SITINCA, he received a death threat from INCASA personnel manager Eduardo Garcia, who threatened to make him "disappear." (*Id.* ¶ 33.) On June 18, 2004, two men shot at Palacios repeatedly but unsuccessfully from the plant parking lot. (*Id.* ¶ 36.) Over the next ten months, Palacios received additional unspecified threats, but was reluctant to report these incidents to the police. (*Id.* ¶ 38.) Following a November 21, 2004 incident involving a verbal threat at the plant, Palacios filed a report with INCASA management. (*Id.* ¶ 39.)

On April 16, 2005, two men broke into Palacios's home, tied up his son, pointed guns at his son and wife, and threatened to kill them all if Palacios continued his union involvement. (*Id.* ¶ 40.) On May 6, 2005, INCASA fired Palacios. (*Id.* ¶ 41.) On October 30, 2005, an armed man appeared at Palacios's home while Palacios was away and threatened that he would return to look for Palacios and his family. (*Id.* ¶ 44.)

On January 26, 2006, Stan Gacek, a private consultant under contract with Coca-Cola, indicated that Coca-Cola would pay for Palacios's security if he would waive his rights to reinstatement at INCASA. (*Id.* ¶¶ 48, 50.) Palacios refused the offer. (*Id.* ¶ 50.) On January 28, 2006, a man seeking to kill Palacios mistakenly killed another man in front of Palacios's house. (*Id.* ¶ 51.) Palacios then fled to the United States on February 6, 2006. (*Id.* ¶¶ 52, 57.)

In early February 2006, Palacios was approached by Rodrigo Romero, a Costa Rican lawyer representing Coca-Cola, who attempted to convince Palacios to accept a financial settlement. (*Id.* ¶ 54.) Palacios declined. (*Id.*) On February 9, 2006, Palacios met with Gacek in New York. (*Id.* ¶ 57.) Gacek requested documentation concerning the case and told Palacios that he would try to convince Coca-Cola to "do the right thing." (*Id.*) Palacios provided the documentation but received no further communication from Gacek. (*Id.*)

Palacios, his wife, his son, and his daughter all now reside in the United States. (*Id.* ¶ 58.) Palacios's daughter is not named as a Plaintiff, but both Palacios and his wife bring claims on her behalf. (*Id.* ¶¶ 8-9.)

2. The Vicente Plaintiffs

Plaintiff José Alberto Vicente Chávez ("Vicente") has been a prominent, successful union leader since the 1990s. (*Id.* ¶ 61.) Between February 21, 2008 and February 26, 2008, he had several confrontations with INCASA management during his involvement in collective bargaining negotiations. (*Id.* ¶¶ 62-63.) On March 1, 2008, four assailants attacked the Vicente family at a local bus station, murdering Vicente's son and nephew and gang-raping his sixteen-year-old daughter. (*Id.* ¶¶ 64-65.) Vicente and his surviving family members went into hiding after the

2

attack, but Vicente has continued to receive death threats. (*Id.* ¶ 66.)

### 3. The Coca-Cola Company

Defendant Coca-Cola, the world's largest manufacturer, distributor, and marketer of soft drinks, is a Delaware corporation with corporate headquarters in Atlanta, Georgia. (*Id.* ¶ 16.) By maintaining a series of "Bottler's Agreements" (*id.* ¶ 18), Coca-Cola requires bottlers worldwide to adhere to a set of "Workplace Rights" standards (*id.* ¶ 20). Coca-Cola is or was a minority owner of INCASA. (*Id.* ¶ 28.)

### B. Procedural History

Plaintiffs commenced this action by filing a Complaint in New York Supreme Court, New York County, on February 25, 2010, asserting claims "under New York state common law . . . and (in the alternative) under the laws of Guatemala." (*Id.* ¶ 2.) The Complaint includes causes of action for wrongful death, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent hiring and supervision, negligent undertaking, battery, assault, trespass, false imprisonment, unjust enrichment, and consumer fraud. Coca-Cola removed the action to this Court on April 13, 2010 and moved to dismiss on June 7, 2010. The motion to dismiss was fully submitted on July 21, 2010.

## II. DISCUSSION

"The doctrine of *forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (internal citations and quotation marks omitted). As the Supreme Court has explained,

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations and internal quotation marks omitted). Because FNC is "a non-merits ground for dismissal," a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432 (internal citations and quotation marks omitted).

The United States Court of Appeals for the Second Circuit has articulated a three-part test for resolving a motion to dismiss for FNC:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public

3

interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Irragori v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)); *accord Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) ("The three-step analysis set forth in *Irragori* . . . applies."). To prevail under the three-step test, "[t]he defendant bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi*, 562 F.3d at 189. The Court will examine and apply each prong of the FNC test in turn.

### A. Deference to Plaintiffs' Choice of Forum

"Any review of a *forum non conveniens* motion begins with 'a strong presumption in favor of the plaintiff's choice of forum.'" *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). As a general matter, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). In applying this presumption, courts nevertheless recognize that "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale" depending on the convenience reflected by the given choice. *Iragorri*, 274 F.3d at 71. Along that sliding scale, the greatest deference is afforded a plaintiff's choice of its home forum, *see id*; *accord Piper*, 454 U.S. at 255-56, while "less deference" is afforded a foreign plaintiff's choice of a United States forum, *Norex*, 416 F.3d at 154 (quoting *Iragorri*, 274 F.3d at 71).

The reason for judicial deference to a plaintiff's choice of its home forum is necessarily linked to the presumption of convenience that attends such a choice. *Piper*, 454 U.S. at 255-56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient."). Thus, "the greater the plaintiff's or the lawsuit's *bona fide* connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be . . . to gain dismissal" for FNC. *Iragorri*, 274 F.3d at 72. By contrast, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands." *Id.*

Plaintiffs argue that their choice to file suit in New York deserves substantial deference for three reasons: (1) the Palacios Plaintiffs now reside in the United States; (2) New York is the "home district" of Coca-Cola; and (3) the forum choice of the Vicente Plaintiffs "is entitled to the same deference awarded a U.S. citizen" pursuant to a 1849 bilateral treaty between the United States and Guatemala. (Pls.' Opp'n 7-10.) For the following reasons, the Court concludes that Plaintiffs' forum choice merits an intermediate but not dispositive measure of deference.

On the first argument, the Court recognizes that the Palacios Plaintiffs are residents of the chosen forum, as it is undisputed that the Palacios family relocated to Michigan following the events at issue.[3]

---

[3] Although the Palacios Plaintiffs currently reside in Michigan, they are considered residents of the Southern District of New York for purposes of calibrating deference under prong one. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 103 (2d Cir. 2000) ("The benefit for a U.S. resident plaintiff

4

(*Id.* at 4.) As United States residents, the Palacios Plaintiffs enjoy "greater deference" to their choice of forum for purposes of FNC analysis. *Piper*, 454 U.S. at 255 ("The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified.").

Notwithstanding such deference to the Palacios Plaintiffs' forum choice, however, the Court "does not assign 'talismanic significance to the citizenship or residence of the parties.'" *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003) (quoting *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 154 (2d Cir. 1980) (en banc)). Indeed, the "strong presumption" of deference afforded where *all* plaintiffs were United States residents did not preclude dismissal for FNC in a similar case involving a Guatemalan labor dispute. *See Aldana v. Del Monte*, 578 F.3d 1283, 1290 (11th Cir. 2009) (dismissing for FNC where all plaintiffs were United States residents). Particularly where, as here, half of the named Plaintiffs continue to reside abroad, "there is no inflexible rule that protects U.S. citizen or resident plaintiffs from having their causes dismissed for *forum non conveniens*." *Pollux*, 329 F.3d at 73; *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000) ("These cases do not reflect a rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens*.").

Second, Plaintiffs urge "great deference" to their forum choice because New York is the "home district" of Coca-Cola. (Pls.' Opp'n 8.) Based on the "established presence" of Coca-Cola in New York and alleged contact between Plaintiffs and Coca-Cola representatives in New York, Plaintiffs argue that New York is "home turf" for Defendant. (*Id.* at 10.) In their view, Coca-Cola is a forum resident (*id.* at 8 n.5), and "where the forum resident seeks dismissal, this fact should weigh strongly against dismissal" on FNC grounds. *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991).

The Court notes that the authority Plaintiffs cite for their "home district" argument concerns a corporate defendant whose principal place of business was located in the forum of choice. *Lony v. Dupont*, 886 F.2d 628, 634 (3d Cir. 1989) ("The foreign plaintiff is suing the defendant in the latter's home forum where the latter's corporate headquarters, headquarters of the division in question, and research laboratories are located. That in itself has considerable weight in showing that the plaintiff['s] choice was based on convenience.") By contrast, Coca-Cola is incorporated under the laws of Delaware and maintains corporate headquarters in Atlanta, Georgia. (Compl. ¶ 16.) To assert "home district" status for New York under these facts would surely transform dozens of similar jurisdictions around the country into competing "home districts" for purposes of FNC analysis.[4]

Nonetheless, it is clear that the deference afforded a plaintiff's choice of forum under the first prong of FNC analysis does not ordinarily diminish when "a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit." *Iragorri*, 274 F.3d at 73. "It is not a correct understanding

---

of suing in a U.S. forum is not limited to suits in the very district where the plaintiff resides . . . ."); *accord Iragorri*, 274 F.3d at 73.

[4] *But see HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, No. 03 Civ. 3336 (LAP), 2004 WL 2210283, at *5 (S.D.N.Y. Sept. 30, 2004).

5

of the rule to accord deference only when the suit is brought in the plaintiff's home district." *Id.* At the same time, it would be "an untenable leap of logic" to conclude that a plaintiff's choice of forum "deserves presumptive deference simply because the chosen forum is defendant's home forum." *Pollux*, 329 F.3d at 74. Accordingly, the Court finds that "a plaintiff's choice to initiate suit in the defendant's home forum – as opposed to any other [district] where the defendant is also amenable to suit – only merits heightened deference to the extent that the plaintiff and the case possess *bona fide* connections to, and convenience factors favor, that forum." *Id.* The Court will address the competing convenience factors at issue in this case under the third prong of the FNC test below.

Finally, Plaintiffs argue that the forum choice of the Vicente Plaintiffs "is entitled to the same deference awarded a U.S. citizen" under FNC analysis despite their continued residence in Guatemala. (Pls.' Opp'n 10.) To support this proposition, Plaintiffs lean heavily on the 1849 General Convention of Peace, Amity, Commerce, and Navigation between the United States of America and the Republic of Guatemala (the "General Convention"), which provides for reciprocal access to the court systems of each country on terms "usual and customary" for citizens. General Convention of Peace, Amity, Commerce, and Navigation, U.S.-Guat., art. XII, March 3, 1849, 10 Stat. 873. Based on this treaty provision, Plaintiffs assert that the Vicente Plaintiffs' choice to sue Coca-Cola in New York "is based on valid reasons and thus entitled to deference, like any U.S. plaintiff." (Pls.' Opp'n 11); *see Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993) ("[W]hen a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such nationals by American courts.").

What Plaintiffs neglect to consider is that foreign residence diminishes forum deference even for United States citizens. Although courts commonly speak of deference to the forum choice of United States "citizen" plaintiffs, *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 146 n.3 (2d Cir. 2000), the Second Circuit has clarified that "we understand those references to signify citizens who [are] also U.S. residents, rather than situations in which an expatriate U.S. citizen residing permanently in a foreign country brings suit in the United States." *Iragorri*, 274 F.3d at 73 n.5. For suits in the latter category, it is "less reasonable to assume the choice of forum is based on convenience." *Id.*

In this case, because the Vicente Plaintiffs are Guatemalan citizens and residents, the Court applies "the same diminished degree of deference as would be accorded an expatriate U.S. citizen living abroad." *Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084 (KMW) (AJP), 2003 WL 230741, at *12 (S.D.N.Y. Feb. 3, 2003). This solution both "satisfies this country's treaty obligations, by treating foreign plaintiffs the same as similarly situated U.S. citizens (*i.e.*, similarly situated in that they reside overseas)" and "respects convenience as the touchstone of the *forum non conveniens* analysis by giving deference solely to plaintiffs actually residing in this country." *Id.*

Because greater deference to the forum choice of the Palacios Plaintiffs is offset by lesser deference to the forum choice of the Vicente Plaintiffs, the Court confers a meaningful but intermediate measure of

6

deference to Plaintiffs' collective forum choice.

### B. Availability of an Adequate Alternative Forum

Under the second prong of the FNC test, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75. For the following reasons, the Court concludes that Guatemala is an available and adequate alternative forum.

#### 1. Amenability to Service of Process

Defendant has represented to the Court that it "consents to process in Guatemala and . . . waive[s] any defense that would not have been available as of the date this action was filed." (Def.'s Mem. 11.) This representation satisfies the first element of the alternative forum test. *See Norex*, 416 F.3d at 157 ("[D]efendants satisfied the first prong of this [alternative forum] test by representing that they would all submit to the jurisdiction of Russian courts in any comparable action filed against them by plaintiff."); *Aguinda v. Texaco*, 303 F.3d 470, 477 (2d Cir. 2002) ("[A]n agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy th[e] [alternative forum] requirement." (quoting *DiRienzo v. Philip Servs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000)), *vacated on other grounds,* 294 F.3d 21 (2d Cir.2002)). Accordingly, the alternative forum inquiry will turn on the substance of the litigation permitted in Guatemala.

#### 2. Permitted Litigation of the Subject Matter

An alternative forum is not adequate where there is "a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *Monegasque de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine,* 311 F.3d 488, 499 (2d Cir. 2002). However, Plaintiffs may not "defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." *Piper*, 454 U.S. at 247.

Plaintiffs contend that Guatemala is not an available or adequate forum for the following reasons: (a) Guatemalan courts were divested of jurisdiction by the filing of the instant action; (b) Guatemalan law provides no remedy; and (c) Guatemalan procedures and political conditions impair the function of the legal system. (Pl.'s Opp'n 21.) Notwithstanding these arguments, the Court finds that Defendant has satisfied its burden of showing that Guatemala is an available and adequate alternative forum.

##### a. Lack of Jurisdiction

Plaintiffs first argue that Guatemala is not an available forum "because its courts were divested of jurisdiction over the case when it was filed in the United States." (*Id.* at 12.) Based on the doctrine of preemptive jurisdiction, they claim that under Guatemalan law, "the jurisdictional base of one court is dissolved with the filing of the case in the other court." (*Id.*)

In the battle of the experts on this issue, the parties dispute the meaning of the Law for the Defense of Procedural Rights of Nationals and Residents ("Defense Law"), the Guatemalan statute that proclaims the "theory" of FNC to violate "the rights guaranteed under the Political Constitution

7

of the Republic and the judicial order of Guatemala."[5] Ley de Defensa de Derechos Procesales de Nacionales y Residentes, Decreto Número 34-97, art. 1 (1997) (Guat.) [hereinafter "Defense Law"]; (Francisco Chávez Bosque Decl., June 4, 2010, Ex. 5) [hereinafter "FCB Decl."]). Plaintiffs characterize the statute as a straightforward repudiation of FNC based on the text of Article 1, which declares the doctrine "unacceptable and invalid[] when it intervenes to prevent the continuation of a lawsuit in the domiciliary courts of the defendants." (Rodolfo Rohrmoser V. Decl., July 1, 2010, ¶ 23) [hereinafter "RRV Decl."] (quoting Defense Law, art. 1).) For that reason, Plaintiffs' expert concludes that a Guatemalan court "would not have competence to hear [a] case" following dismissal for FNC. (RRV Decl. ¶¶ 22-23.)

However, Plaintiff's position is undercut by a later provision of the same statute. Article 3 of the Defense Law expressly provides that "the national judges may reassume jurisdiction" following FNC dismissal by a foreign judge. Defense Law, art. 3. Based on this backstop provision, Defendant argues that "Guatemala has not been permanently 'divested' of jurisdiction." (Reply 5; *see* FCB Decl. ¶ 58 ("Article 3 of [the Defense Law] provides that in a case in which a foreign court accepts the *Forum Non Conveniens* defense and sends the case back to Guatemala, Guatemalan Courts cannot refuse to hear the case, as they must insure that the plaintiff has a Court for his claim.").) Plaintiffs offer no alternate explanation for Article 3 in their opposition papers or expert declaration. In the face of this omission, the Court adopts Defendant's interpretation of the Defense Law for purposes of the jurisdictional inquiry.

Although a case must be "spontaneously and . . . free[ly]" filed in order for a Guatemalan court to assume jurisdiction following a FNC dismissal, Defense Law, art. 2, Plaintiffs cannot defeat FNC by simply announcing their refusal to re-file in Guatemala. *See Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251, 261 (W.D.N.Y. 2009) ("Plaintiffs' refusal to litigate the case in Mexico does not render the Mexican forum unavailable. . . . There is nothing to prohibit the Plaintiffs from agreeing to the Defendant's stipulation to jurisdiction in the Mexican court . . . .") It is the availability of the forum, not Plaintiffs' current willingness to avail themselves of the forum, that is relevant to the FNC inquiry.

In lieu of developing a more rigorous interpretation of the disputed statute, Plaintiffs appeal to a 1995 opinion by Guatemalan Attorney General Aciscio Valladares Molina on the various legal and political evils of FNC. (Pls.' Opp'n 12-13.) As a legal matter, Molina finds that "Guatemala does not recognize the *forum non conveniens* theory . . . . Once the plaintiffs have exercised the right to bring suit in the domicile of the defendants, whether in this country or abroad, it is illegal for a Guatemalan judge to disturb this choice of tribunal." Op. Att'y Gen. (May 3, 1995) (Guat.); (RRV Decl. Ex. 7). As a political matter, he also concludes that "[t]he theory of *forum non conveniens* . . . would turn into a cruel mockery which would cause just indignation to the Republic of Guatemala, as it would no longer provide justice to Guatemalan citizens in the United States." (*Id.*)

---

[5] Courts in the Southern District of New York frequently rely on expert affidavits to evaluate the availability of a foreign forum. *See Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 346 (S.D.N.Y. 2008); *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 533 (S.D.N.Y. 2006).

8

Whatever the disfavored status of FNC in Guatemala, however, such reservations are hardly dispositive of the FNC analysis at issue. While Guatemalan officials and jurists are free to dispose of the doctrine at home, they are not free to dictate the contours of the inquiry here. Accordingly, the Court rejects the claim that Guatemala is not an available forum because it lacks jurisdiction in this case.

### b. No Available Remedy

Plaintiffs next argue that Guatemala is not an adequate alternative forum because the substantive law of the country "provides no remedy" in this case. (Pls.' Opp'n 14.) On their view, "[c]omplete unavailability of a remedy is a firmly established ground for finding an alternate forum inadequate." (*Id.* at 15.) Since Guatemalan law does not recognize vicarious corporate liability or provide consumer fraud protection, Plaintiffs conclude that Guatemala is not an adequate forum.

What Plaintiffs neglect to consider is that the "availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). Rather, the relevant inquiry concerns the capability of the foreign court to litigate the "essential subject matter" of the dispute. *In re Alcon S'holder Litig.*, No. 10 Civ. 0139, 2010 WL 2076991, at *7 (S.D.N.Y. May 24, 2010) (citing *Capital Currency Ex., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998)).

In this case, the Complaint asserts twelve separate causes of action. Defendant proffers uncontroverted expert testimony that Guatemalan law recognizes substantially equivalent claims for at least ten of the twelve causes of action, including the claims for negligent supervision and negligent undertaking for which Coca-Cola is alleged to be directly liable. (FCB Decl. ¶¶ 68-70.) To the extent that Coca-Cola allegedly "directed" (Pls.' Opp'n 15), "assisted" (*id.* at 2), and "participated in" (*id.* at 5) a campaign of violence in Guatemala, such acts would implicate the remaining tort claims as well.

Plaintiffs term these parallel causes of action "utterly irrelevant," insisting that "if Guatemala provides 'no basis' to hold a corporation vicariously liable, then Guatemala is *not* an adequate forum to send claims of vicarious liability against a corporation."[6] (*Id.* at 15.) In essence, Plaintiffs equate a single theory of recovery with the "essential subject matter" of the dispute. *In re Alcon S'holder Litig.*, 2010 WL 2076991, at *7. Because the absence of an "identical cause of action" does not suffice to disqualify a forum, *PT United*, 138 F.3d at 74, the Court cannot endorse such a cramped view. *See also Piper*, 454 U.S. at 255 (affirming dismissal for FNC where alternate forum did not recognize strict liability).

Indeed, the litigation preceding this case demonstrates that Guatemalan courts have already vindicated Plaintiffs' rights in multiple actions arising from the facts at issue here. Plaintiff José Palacios filed a wrongful termination claim against INCASA on July 5, 2005, but agreed to a monetary settlement on February 2, 2006. (FCB Decl. ¶ 49; Compl. ¶ 52.) Another Guatemalan court conducted a criminal trial

---

[6] Despite this posture on the vicarious liability issue, Plaintiffs do not appear to dispute the claim that Guatemalan law should govern this case in either forum. The Court briefly addresses the relevant New York choice of law analysis in Subsection II.C.2 below.

9

of the assailants who perpetrated the March 1, 2008 attack on the Vicente Plaintiffs. (FCB Decl. ¶ 42.) Following trial testimony by two surviving Vicente Plaintiffs, the defendants were convicted on charges of murder, rape, and aggravated robbery. (*Id.* ¶¶ 46-47.) On April 13, 2009, Anibal Jehovany Piche Alvarez was sentenced to 100 years imprisonment and Bartolome Xiloj López was sentenced to 96 years imprisonment for their respective roles in the attack. (*Id.* ¶ 47.) A third assailant was shot and killed by Guatemalan authorities. (Compl. ¶ 67.)

Thus, the case history makes clear that Plaintiffs both initiated and participated in Guatemalan proceedings to redress the same set of injuries asserted here. These acts and outcomes belie the assertion that Guatemala "provides no remedy" in this case. *See Turedi v. Coca-Cola Co.*, 460 F. Supp. 2d 507, 524 (S.D.N.Y. 2006) ("Plaintiffs' assertions that Turkey does not provide an adequate forum for the relief they seek is somewhat contradicted by their own acts in filing complaints against the Turkish police seeking redress for some of the same injuries they assert here.").

The additional injury alleged in this round of litigation, of course, is the consumer fraud claim. It is presumptively true that a Guatemalan forum could not address the claim that Coca-Cola allegedly perpetrated fraud on New York consumers by misrepresenting its "Workplace Rights" standards. (Pls.' Opp'n 15.) But Plaintiffs cannot bypass the FNC inquiry by simply asserting a claim under a United States statute with no exact foreign equivalent. (Reply 7.)

The statute at issue, New York General Business Law § 349, prohibits deceptive acts and practices in the conduct of any business in the state. N.Y. Gen. Bus. Law § 349(a) (McKinney 2010). Section 349(h) extends a private right of action to "any person who has been injured" by such deceptive business practices. N.Y. Gen. Bus. Law § 349(h); *see Small v. Lorillard*, 679 N.Y.S.2d 593, 599 (App. Div. 1998). It is a "basic point" that a deceptive practice must "result in a transaction in which the consumer was harmed" in order to be actionable under Section 349. *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 326 (2002). In this case, Plaintiffs are Guatemalan labor activists, not New York consumers allegedly injured by deceptive Coca-Cola statements and advertising. To assert consumer fraud under these facts seems a transparent attempt to bootstrap a foreign claim into the New York court system. The Court finds such "creative pleading" unpersuasive. Transcript of Oral Argument at 2, *Turedi v. Coca-Cola Co.*, 343 Fed. App'x 623 (2d Cir. 2009) (rejecting a Section 349 claim in a similar FNC case).

Accordingly, the Court concludes that Guatemalan law provides adequate remedies and redress for the harms alleged in the Complaint.

a. Inadequate Procedures and Violent Conditions in Guatemala

Finally, Plaintiffs allege that Guatemala is not an adequate forum because it lacks "an independent and functioning legal system." (Compl. ¶ 3.) Plaintiffs characterize the Guatemalan judiciary as plagued by backlog, ineffective discovery rules, and systemic corruption. (Pls.' Opp'n 16-21.) To attend trial in Guatemala, they argue, would expose Plaintiffs to "further physical and psychological harm" (*id.* at 17) due to ongoing labor violence in the country (*id.* at 19-20). To proceed in absentia,

10

however, would "allow damaging statements to be incorporated as admissions" against them. (*Id.* at 18.) Thus, Plaintiffs assert that "[a] realistic view of the Guatemalan judicial system in practice demonstrates that it is not yet robust, transparent, or procedurally effective enough to handle this case." (*Id.* at 16.)

As a threshold matter, "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United*, 138 F.3d at 73; *accord Monegasque*, 311 F.3d at 499 ("We have been reluctant to find foreign courts 'corrupt' or 'biased.'"); *Blanco*, 997 F.2d at 982 ("[I]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." (internal citation and quotation marks omitted)). American courts "should be wary of branding other nations' judicial forums as deficient" in substance or procedure, as "[s]uch denunciations not only run counter to principles of international comity . . . , but also risk imposing on our judicial system the burden of serving as courtroom to the world for the adjudication of essentially foreign disputes." *Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 532-33 (S.D.N.Y. 2006).

In this case, Plaintiffs have made no "showing of inadequate procedural safeguards" sufficient to trigger an adverse judgment. *PT United*, 138 F.3d at 73. Although Guatemalan discovery is certainly limited in comparison to the American system, "it is well-established that 'the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate.'" *In re Alcon S'holder Litig.*, 2010 WL 2076991, at *7 (quoting *Blanco*, 997 F.2d at 982). Indeed, "[w]ere a forum considered inadequate merely because it did not provide for federal style discovery, few foreign forums could be considered 'adequate' – and that is not the law." *BlackRock, Inc. v. Schroders PLC*, No 07 Civ. 3783 (PKL), 2007 WL 1573933, at *7 (S.D.N.Y. May 30, 2007) (citation omitted).

In addition, every American court to have considered the issue has found Guatemalan courts to be adequate alternatives. *See, e.g.*, *Aldana*, 578 F.3d at 1291 (upholding state court finding that Guatemala was an adequate forum on collateral estoppel grounds); *Lisa, S.A. v. Gutierrez Mayorga*, 240 Fed. App'x 822, 824 (11th Cir. 2007) (per curiam) (upholding district court's determination that Guatemala was an adequate forum and noting that "every court to address the issue has reached the same conclusion"); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1527 (D. Minn. 1996) ("Guatemala provides an adequate remedy for plaintiff's claims."); *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1361 (S.D. Tex. 1995) ("[P]laintiffs will not be treated unfairly or deprived of all remedies in the courts of Guatemala.").

Plaintiffs urge the Court to disregard these holdings by arguing that "current country conditions" should reverse the forum adequacy determination. (Pls.' Opp'n 19.); *see Aguinda v. Texaco, Inc.*, Nos. 93 Civ. 7527 (TSR), 94 Civ. 9266, 2000 WL 122143, at *1-2 (S.D.N.Y. Jan. 31, 2000) (requesting additional briefing on the adequacy of the proposed alternative forum in light of a recent military coup in Ecuador). To that end, Plaintiffs cite recent incidents of violence, corruption, and judicial intimidation in Guatemala, as documented by the 2009 Guatemala Country Report issued by the United States

11

Department of State. (Pls.' Opp'n 19-20.) Although the Second Circuit has recognized Country Reports as generally reliable sources of information on political conditions abroad, *see Bridgeway Corp v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000), conclusory State Department summaries are not dispositive of the adequacy inquiry, *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 544-45 (S.D.N.Y. 2001).[7] To establish the inadequacy of a proposed alternative forum, "something more than bald assertion is required." *Id.* at 544.

Plaintiffs supply the "something more" in the form of various news articles on corruption and violent crime, including a particularly gruesome account involving four severed human heads dumped by suspected gang members in Guatemala City. (Pls.' Opp'n 20.) Despite the provocative headlines, however, these incidents differ in kind from the systemic judicial breakdowns that have prompted other courts to question forum adequacy. *See Bridgeway Corp*, 201 F.3d at 138 (finding that the Liberian "judicial system, already hampered by inefficiency and corruption, collapsed for six months following the outbreak of fighting" (internal quotation marks omitted)); *accord Aguinda*, 2000 WL 122143, at *1-2 (noting that the military coup was "widely reported as evidence of a resurgent military involvement in civilian affairs" in Ecuador). For that reason, the Court declines to brand the judicial system of Guatemala procedurally deficient or politically corrupt.

Contrary to Plaintiffs' assertions, nothing in this conclusion disturbs their "free opportunity" to attend future proceedings in Guatemala pursuant to the guarantees of the General Convention. (RRV Decl. ¶¶ 11-13.) Should the Palacios Plaintiffs choose to forego that opportunity due to safety concerns or financial constraints, they retain the option to make written submissions (FCB Decl. ¶ 17), to appear through an attorney-in-fact (*see id.* at ¶ 18), and to request testimony through letters rogatory (*id.* at ¶ 28).[8] Although Plaintiffs regard the suggestion that they proceed in absentia as "offensive procedurally and personally," their objections primarily rely on rights guaranteed by the United States Constitution and federal statute, not by Guatemalan law. (Pls.' Opp'n 17-18.) To pretend that anything less than the full plethora of United States constitutional rights renders an alternate forum inadequate would disqualify most civil law systems and gut the doctrine of FNC. Such an expansive view of the common law tradition cannot govern the law of forum adequacy.

---

[7] The 2009 Guatemala Country Report asserts that "[t]here were numerous reports of corruption, ineffectiveness, and manipulation of the judiciary. Judges, prosecutors, plaintiffs, and witnesses also continued to report threats, intimidation, and surveillance." U.S. Dep't of State, Human Rights Report: Guatemala (2009), *available at* http://www.state.gov/g/drl/rls/hrrpt/2009/wha/136114.htm. The statistics cited in support of these assertions, however, reveal a significant *decrease* in the number of reported instances of threats or aggression toward judicial workers from the previous year. *Id.* ("At year's end the special prosecutor for crimes against judicial workers received 68 cases of threats or aggression against workers in the judicial branch, compared with 129 in 2008.").

[8] See 28 U.S.C. § 1782(a), which provides that a district court may order testimony or document production "pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person." 28 U.S.C. § 1782(a) (2006); *see also In re Application of Schmitz*, 259 F. Supp. 2d 294, 296-97 (S.D.N.Y. 2003) (laying out the statutory requirements of Section 1782, but finding that district courts have "broad discretion" over the issuance of discovery orders under the statute).

The Court is, of course, mindful of the dangers that may face the Palacios Plaintiffs should they return to Guatemala. For that reason, the Court will reconsider the adequacy finding upon a showing that Plaintiffs would be required to appear in Guatemala to prosecute this case. *See Aldana*, 578 F.3d at 1291 (affirming a dismissal for FNC that "contained an express proviso that the appellants' motions would be reconsidered if there is ever any indication that they might be required to return to Guatemala").

### C. Balance of Public and Private Interest Factors

After determining both the degree of deference due to Plaintiffs' choice of forum and the availability of an alternative forum, the Court "must then balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." *Wiwa*, 226 F.3d at 100. For the following reasons, the Court concludes that both the private and public interest factors at issue weigh in favor of dismissal.

#### 1. Private Interest Factors

In *Gulf Oil v. Gilbert*, the Supreme Court laid out the seminal list of private interest factors, including: (a) ease of access to evidence; (b) availability of compulsory process; (c) cost for cooperative witnesses to attend trial; (d) enforceability of a judgment; and (e) all other practical matters that make a trial "easy, expeditious and inexpensive." 330 U.S. at 508; *see Turedi*, 460 F. Supp. 2d at 526. "In applying these factors, 'the court should focus on the precise issues that are likely to be actually tried, taking into consideration the convenience of the parties and the availability of witnesses and the evidence needed for the trial of these issues.'" *Monegasque*, 311 F.3d at 500 (quoting *Iragorri*, 274 F.3d at 74).

In this case, the concentration of evidence in Guatemala weighs heavily in favor of dismissal. The underlying threats and violence allegedly occurred in Guatemala. The INCASA personnel who allegedly organized the "campaign of violence" (Compl. ¶ 1), the assailants who allegedly carried out the attacks, and the witnesses to the relevant torts presumably continue to reside in Guatemala. In addition, the full documentary record of Plaintiffs' union activities and prior legal proceedings remains in Guatemala. By contrast, the Complaint describes only a single event that occurred in New York – the February 9, 2006 meeting between José Palacios and Coca-Cola representative Stan Gacek, which resulted in a document transfer but no further communication.[9] (Compl. ¶¶ 53, 57.) Although the opposition brief states that Coca-Cola issued direction to INCASA from New York (Pls.' Opp'n 8), the Complaint includes no such allegation (Reply 9 n.7). Based on these facts, the Court finds that whatever conduct allegedly occurred in the United States "pale[s] by comparison [to] the magnitude of the factual and legal links" to the alternative forum. *Turedi*, 460 F. Supp. 2d at 527.

The cost of obtaining the attendance of cooperative witnesses at trial also mitigates, albeit modestly, in favor of dismissal.[10] To

---

[9] While Coca-Cola presumably retains access to the documentation provided to Gacek at the February 9, 2006 meeting (Compl. ¶ 57), the record does not indicate the scope or substance of these documents.

[10] Although neither party has argued the issue of compulsory process, it appears that documents and witnesses in Guatemala are likely beyond the reach of the Court's power to compel production, a factor

13

proceed in New York would likely require the transportation of numerous Guatemalan residents, including both perpetrators and eyewitnesses, to this jurisdiction.[11] Translation of all Spanish language testimony and relevant documents would also be required. *See Blanco*, 997 F.2d at 982 ("[T]he documentary evidence is in the Spanish language, as would be trial or deposition testimony, requiring translation to English that would result in significant cost to the parties and delay to the court. This factor militates strongly in favor of Venezuela as a more appropriate forum for this litigation."). The price tag on this litigation certainly does not "overrid[e]" the choice of forum, particularly where Defendant can devote "vast resources" to the case. *Wiwa*, 226 F.3d at 107. Nonetheless, cost considerations remain a "legitimate part of the *forum non conveniens* analysis," and those considerations support dismissal here. *Id.*

Plaintiffs weakly assert that "any judgment Plaintiffs might obtain against [Coca-Cola] would be more easily enforced by U.S. courts were it issued by a U.S. court." (Pls.' Opp'n 23.) But the material question under *Gilbert* is whether a judgment may be enforced, not whether a judgment may be enforced by United States courts. In the absence of supporting argument or relevant authority, the Court declines to credit the proposition that a foreign judgment is *per se* inferior for purposes of the enforceability prong of the *Gilbert* test.

The remaining practical considerations largely counterbalance each other on the scales of convenience. Plaintiffs point out that retaining jurisdiction would spare them the financial burden of bringing the case in another forum and allow the parties to "rely less on the cumbersome process of letters rogatory." (*Id.*) Defendants argue that moving the action to Guatemala would permit them to implead INCASA and avoid the costs and delays of translation. (Def.'s Mem. 18-19.) The Court regards these arguments as secondary to the initial inquiry about the locus of events and evidence in this case. Because Guatemala remains the "true focus of this litigation," and the bulk of the relevant evidence remains in Guatemala, the Court finds that the private interest factors tilt decidedly in favor of dismissal. *Polanco*, 941 F. Supp. at 1528.

### 2. Public Interest Factors

Under the *Gilbert* analysis, the Court must also consider the following public interest factors: (a) the administrative difficulties associated with court congestion; (b) the imposition of jury duty on a community with no relationship to the litigation; (c) the local interest in resolving local disputes; and (d) the problems implicated in the application of foreign law. *Monegasque*, 311 F.3d at 500 (citing *Gilbert*, 330 U.S. at 508-09).

---

that would also weigh in favor of dismissal. *See Blanco*, 997 F.2d at 982 ("Similarly, most, if not all, of the witnesses whose testimony would be required are located in Venezuela; there is no process available to compel their appearance in New York, which in any event would entail considerable expense."); *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 306 (S.D.N.Y. 2007) ("Access to the many party and non-party witnesses whose testimony would be necessary, as well as related documentary evidence, is entirely in Switzerland, and thus beyond the reach of this Court's power to compel production.").

[11] Although the parties proffer competing lists of "key witnesses" residing in each jurisdiction (Pls.' Opp'n 22 n.19; Reply 9 n.7), the Court finds that the overwhelming majority of non-party witnesses with direct knowledge of the underlying facts reside in Guatemala.

14

Plaintiffs argue that "substantial delays" in the Guatemalan system weigh in favor of retention of jurisdiction. (Pls.' Opp'n 19.) According to Plaintiffs' expert declarant, Guatemalan legal proceedings are "remarkably slow" and appeals alone "may easily add six to eight years to a lawsuit." (RRV Decl. ¶ 41.) Absent any comparative analysis, however, there is no indication that the Guatemalan courts are any more congested than the busy courts in this District. *See, e.g.*, *Do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 307 (S.D.N.Y. 2007) ("[T]here is no indication that courts in the Switzerland are any more congested than the busy courts in this district."); *Corporacion Tim*, 418 F. Supp. 2d at 536 ("[T]here is no indication that courts in the Dominican Republic are any more congested than the busy courts in this District."). For that reason, "[t]he Court is not prepared to make subjective or conclusory comparative assessments of docket congestion" here as opposed to Guatemala. *Miller v. Calotychos*, 303 F. Supp. 2d 420, 429 (S.D.N.Y. 2004).

The Court further finds that the remaining public interest factors cut squarely in favor of dismissal. The dominant Guatemalan contacts identified above diminish any purported connection to the New York jury pool. As a result, "[t]he interest in protecting jurors from sitting on cases with no relevance to their own community weighs heavily" in favor of dismissal. *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998). Similarly, the Guatemalan context of the underlying events gives rise to a Guatemalan interest in local adjudication. *See Do Rosario Veiga*, 486 F. Supp. 2d at 307 (noting the "significant interest in having localized matters decided in the local forum").

Finally, a preliminary choice of law analysis indicates that Guatemalan law would likely apply to this case. In a diversity action, a federal court must apply the choice of law rules of the state in which it sits. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Under New York law, the Court must (1) determine whether there is an actual conflict between the laws invoked by the parties; (2) classify the conflicting laws by subject matter with reference to New York law; and (3) apply New York choice of law rules to determine which state's substantive law controls. *See Booking v. Gen. Star Mgmt Co.*, 254 F.3d 414, 419-20 (2d Cir. 2001); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 376, 390 (S.D.N.Y. 2002).

Here, the conflict between New York and Guatemalan law is undisputed (Def.'s Mem. 21 n.11; Pls.' Opp'n 15-16), and the claims at issue clearly sound in tort law (Compl. ¶ 2). "In tort actions, if there is a conflict of laws, New York courts apply an 'interests analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). As the primary locus of the alleged torts at issue, Guatemala certainly trumps New York under this rubric. Thus, "[w]hile the choice of law issue need not be definitively resolved at this point, this Court would likely be required to apply" Guatemalan law to Plaintiffs' claims. *In re Ski Train Fire*, 230 F. Supp. 2d at 391 (internal citation and quotation marks omitted).

While the task of applying foreign law remains "a chore federal courts must often perform," *Manu Intern., S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 68 (2d Cir. 1981), the doctrine of FNC "is designed in part to help

15

courts avoid conducting complex exercises in comparative law." *Piper*, 454 U.S. at 251. For that reason, the probable application of Guatemalan law also weighs in favor of dismissal of this case.

### III. CONCLUSION

Because (1) Plaintiffs' choice of forum merits meaningful but not dispositive deference; (2) Guatemala is an available and adequate alternative forum; and (3) the balance of public and private interest factors favors dismissal, Defendant's motion to dismiss for *forum non conveniens* is HEREBY GRANTED. In an abundance of caution, however, the Court conditions dismissal as follows: in the event that (1) this case is dismissed in Guatemala under the Defense Law, and this result is affirmed by the highest court of Guatemala, *see Aguinda*, 303 F.3d at 477; or (2) Plaintiffs are required to return to Guatemala to prosecute this case, *see Aldana*, 578 F.3d at 1291, the Court will be open to reconsider this holding. Accordingly, the Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: November 18, 2010
        New York, New York

* * *

Plaintiffs are represented by Emily Maruja Bass, Law Offices of Emily Bass, 551 Fifth Avenue, 28th Floor, New York, NY 10176; Piper M. Hendricks, Fried, Frank, Harris, Shriver & Jacobson, LLP, 1001 Pennsylvania Avenue NW, Suite 800, Washington, DC 20004; Terrence Patrick Collingsworth, Conrad & Scherer, LLP, 1156 15th Street NW, Suite 502, Washington, DC 20005. Defendant is represented by Adam Michael Abensohn, Faith E. Gay, and Sanford Ian Weisburst, Quinn Emanuel Urquhart Oliver & Hedges LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/2010